## ST. LOUIS SOUTHWESTERN RAILWAY COMPANY
## *v.* SELMAN.

### Opinion delivered April 25, 1896.

COMPROMISE—CONCLUSIVENESS.—One who accepts a draft for a less sum in full settlement of a claim against a railroad company for damages for stock killed, and gives a receipt reciting such settlement, cannot repudiate the settlement and sue for what he claims to be the value of his stock, although, by mistake of the company, the receipt and draft included an additional sum in excess of his claim as payment for other stock killed belonging to a person of similar name, which sum the claimant was compelled to refund.

Appeal from Craighead Circuit Court, Jonesboro District.

WILLIAM H. CATE, Judge.

*Sam H. West* and *J. C. Hawthorne*, for appellant.

1. Plaintiff's claim was extinguished and settled when he accepted the seven dollars. Compromises of disputed claims, fairly entered into, are final, and will be

sustained.   21 Ark. 69; 43 *id.* 172; 29 *id.* 131; 61 N. Y. 623; 60 Mass. 148; 12 Wall. 232; 120 N. Y. 190; 8 *id.* 402; 99 *id.* 174.

2.   If his claim was not settled, he could not retain the money, and maintain this suit for the balance.   15 Ark. 286; 17 *id.* 603; 20 *id.* 424; 46 *id.* 337; 53 *id.* 16; 52 *id.* 150; 17 *id.* 229; 144 Mass. 546; 76 N. Y. 36.

BUNN, C. J.   This is a suit for damages for killing a sow and five pigs, begun in a justice's court, appealed to the circuit court of Craighead county, and there resulting in judgment for plaintiff, Selman, in the sum of $20, the amount claimed, less the amount of $7 already paid plaintiff; from which defendant railway company appeals to this court.

The controversy is somewhat out of the usual order; no question of the right to recover being involved, but solely the question of the binding force of a settlement of the claim having been made before the institution of this suit.   In July, 1892, the hogs in question were killed by one of appellant's trains, and in a negotiation for settlement between appellee, Selman, the owner of the hogs, and the stock claim agent of appellant, the latter offered to pay the former the sum of seven dollars in full settlement, on the offer of the former to take the sum of ten dollars, which had been declined by said agent.   After this the agent received notice that one of the trains of his company had in August killed two cows of Selman, which were valued at twenty dollars by the owner.   This was in September, 1892, and immediately the agent, under the impression that the cows were the property of appellee, Selman, made out and sent to him the following receipt or voucher, notifying him that if he would sign the same, and return to him, he would send him a check for the $37.00 therein mentioned, to-wit :

"$37.00. St. Louis Southwestern Railway. Received of the St. Louis Southwestern claim agent draft No. 2844, for thirty-seven dollars, for amount in full for settlement of claim of W. L. Selman for one black and white sow, and five pigs killed July 3rd, 1892, (marked); 1 black and white cow, four years old, killed Aug. 23rd, 1892, (branded); 1 yellow and white cow, four years old, killed Aug. 23rd, 1892,—killed at or near mile post 137 about 1¼ miles north of Obear, on or about the 3rd day of July and 23rd day of Aug., 1892. This receipt is in full demands against said railway company for damages and claim, and I hereby warrant that I am the owner of said stock, and entitled to receive said money and receipt for same."

. . . . . . . . . . . . . . . . . . . . . . .

Indorsed (on the outside of fold):

"July 3rd, 1892, 1 black and white sow and five pigs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ 7.00.

Aug. 23rd, 1892, 1 black and white cow. .   15.00.

Aug. 23rd, 1892, 1 yellow and white cow. .   15.00."

This receipt or voucher was received, signed in his own name, and so returned to said agent, who at once forwarded the check for the $37 to appellee, and he received and cashed it.

Subsequently it was ascertained that the cows did not belong to appellee, but to one Salman; and defendant's attorney notified appellee of the mistake, and demanded a repayment of $30 of the amount,—that being the value of the two cows, as named in the receipt or voucher. Appellee refused to refund this amount, but offered to refund $17; thus retaining $20 for the hogs, which he claimed to be their value. The attorney declined to accept this amount, and sued Selman in a justice's court, and obtained judgment for the $30 claimed, which was paid by Selman. Selman then sued for the killing of his hogs, laying his damages at $20,

with the result stated, and the railway company appealed.

The testimony of the plaintiff in the case is to the effect that Selman was the owner of the hogs; that they were killed as stated; that they were worth $20, and that plaintiff had agreed to accept $10 in payment for them, and that the claim agent had declined to pay that sum, but had offered to pay $7; that afterwards the receipt or voucher was signed, and the check received by him and cashed; that he knew at the time of signing the receipt, and receiving and cashing the check, that he did not have any cows killed; that the claim agent called on him, and asked him to refund thirty dollars of the amount so paid him; and that in response he advised him that he was looking after his own interest, and not that of his (the agent's), and would return $17 of the money,—and other facts stated above.

Daniel Haynes, the claim agent, testified substantially to the same state of facts as Selman, and, in addition thereto, that the itemized indorsement on the voucher was on the outer fold, and Selman could not have helped but observe it.

The case was tried by the court, sitting as a jury, and the court refused to declare the law as asked by the defendant. Defendant excepted to this refusal to declare the law. Thereupon the court, after finding the facts substantially as recited above, made this declaration of law, to-wit: "Plaintiff had no legal right to the check, nor to take out of it $20 for his hogs, for defendant had not agreed to pay $20 for his hogs, or that they were worth that much; and plaintiff was liable to the company for the full amount of the check $37. On the other hand, defendant had no right to arbitrarily assess the value of the hogs at $7, for plaintiff had not agreed to take that sum for them. If defendant had tendered plaintiff a check and voucher for $7, in full for his hogs, and he

had accepted and signed same, he would be bound there-by, and barred of any further recovery, but the fact that he took a check for $37, and signed a voucher for that amount, does not signify that he intended or agreed to accept $7 in pay for his hogs, though there was a memo-randum or statement in or upon the voucher fixing the value of the hogs at $7, because at the time he disclaimed any such intention by proposing to keep $20 as pay for the hogs, and has ever since insisted. Hence there has been no mutual agreement or settlement of the matter between the parties which is binding upon them, and their rights in the matter remain subject to adjudica-tion and determination here. The finding will be for the plaintiff, and the value of the hogs assessed at $20. As defendant has entered a plea of payment, it would perhaps be proper, under the plea, to allow a credit of the $7 already in the hands of the plaintiff by reason of the check, leaving a balance of $13 for plaintiff. Judg-ment accordingly.''

The declaration of law to the effect that defendant, in tendering the receipt or voucher to the plaintiff to sign and return the same containing the value of the hogs killed, arbitrarily fixed the value of the same is misleading. Defendant could not bind plaintiff by such valuation, and plaintiff was free to accept it as a propo-sition of settlement, for that was all that it was. The plaintiff saw fit to accept the proposition by signing and returning the receipt to that effect, and by receiving and cashing the check. What other arrangments he afterward determined upon, of himself, does not matter.

There does not appear to have been in the settle-ment of this matter any fraud, intimidation, over-reaching, or concealment on the part of defendant's agent, and, indeed, none such is charged against him; therefore, our consideration is directed solely to the proposition whether or not, under the state of

case made out, the settlement between plaintiff and the defendant's agent is final and conclusive on both the parties, or is still open for adjudication, as held by the court below in its declaration of law. In this respect this case is governed by the principle announced in *Springfield & Memphis R. Co.* v. *Allen*, 46 Ark. 219, in which this court said: "It is certainly true that a receipt is only *prima facie* evidence of what it imports, and may be explained or contradicted by the party signing it; and if that were all of this case, it would be apparent that Allen's action was not barred by the receipt he signed. But here was a claim, or several claims, the justice of which was denied, and the amounts due upon them were in dispute. The debtor, in effect, said to the creditor: "I will pay you a certain sum on your disputed claims, provided you will take it in satisfaction of the whole." While the offer stood in this form, there was but one of two courses open to the creditor,—either to decline the offer, or accept it with conditions attached. It was competent for him to receive the amount in discharge of his debt, and the receipt that he executed is presumptive evidence that he did so. A settlement and receipt in full of an unliquidated demand, when made with complete knowledge of all the circumstances, is a bar to a subsequent action upon the demand. The bar does not rest upon the written receipt, but upon the acceptance of the sum paid and received, the writing being only one of the modes of showing the intention of the parties.

After the voluntary adjustment of a matter in dispute, the contest is ended, and the disputed question cannot again be raised by the parties. Compromises avoid litigation, and are encouraged by the law; and, when legally made, they are binding, and are not disturbed by the courts."

The declaration of law by the court below, and the judgment in accordance therewith, were erroneous, and the judgment is reversed, and the cause remanded.